UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MICHAEL L. ISRAEL,

                          Plaintiff,

        -v-

CITY OF NEW YORK, ET AL.,

                         Defendants.
------------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 10/5/12

11 Civ. 7726 (JMF)

MEMORANDUM
OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

    Plaintiff Michael L. Israel, a New York State prisoner proceeding *pro se*, brings this action against the City of New York and three corrections officers pursuant to Title 42, United States Code, Section 1983, alleging that his Fourth Amendment rights were violated when he was strip searched while incarcerated in two New York City Department of Correction ("DOC") facilities. On May 31, 2012, Defendants filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, arguing principally that, in light of the Supreme Court's decision in *Florence v. Board of Chosen Freeholders*, 132 S. Ct. 1510 (2012), Israel's claim fails as a matter of law. (Docket No. 42). For the reasons discussed below, Defendants' motion for summary judgment is GRANTED.

## BACKGROUND

    The Defendants' motion is unopposed. Accordingly, the Court considers the following facts, proffered by the Defendants and supported by documentary evidence, to be undisputed for purposes of this motion. *See Vt. Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 246 (2d Cir. 2004).

On July 18, 2011, Plaintiff was arrested for misdemeanor assault and entered into DOC custody. (Speight Decl. Ex. B). Israel was initially transported to the Manhattan Detention Center (the "MDC"), where he remained until August 2011. (Speight Decl. Ex. C at 7). On several occasions during his incarceration at the MDC, Plaintiff was transported to court for appearances related to criminal charges pending against him. (*Id.* at 39). Plaintiff alleges that on July 27, 2011, and again on July 28, 2011 — the date of one such court appearance — he was subjected to strip searches in the receiving room of the MDC. (Am. Compl. at II B, II D; Speight Decl. Ex. C at 28-33). Plaintiff alleges that, during these two searches, he was required to strip naked, face the correction officer, lift his genitals, squat, bend over, and wiggle his toes. (Speight Decl. Ex. C at 29-33). Plaintiff does not allege that the correction officers directing these searches physically touched him. (*Id.*).

In August 2011, Plaintiff was transferred to the George R. Vierno Center (the "GRVC") at Riker's Island. (Speight Decl. Ex. C at 7). On September 27, 2011, correction officers at the GRVC conducted a search of the cells within the housing area in which Israel was located. (Speight Decl. Ex. C at 34; Am. Compl. at II D). According to Plaintiff, the corrections officer assigned to conduct the search of his cell directed him to remove his clothing, lift his genitals, and spread his buttocks while nude. (Speight Decl. Ex. C at 35-36, 67, 71). After Israel complied, correction officers searched Plaintiff's cell. (*Id.* at 34-35, 70-71).

Plaintiff commenced this action on October 28, 2011, alleging that his constitutional rights were violated when he was strip searched. (Docket No. 2). He seeks $1 million in damages for cruel and unusual punishment, unfair treatment, and emotional distress. He also seeks injunctive relief — to wit, that "any inmate, prisoner, detainee, etc. who is being held on misdemeanor charges not be stripped 'buck-naked' searched." (Am. Compl. at V). On May 31,

2

2012, Defendants filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. (Docket No. 42). Plaintiff was informed of the Defendants' intention to file this motion during a telephone conference in front of Magistrate Judge Andrew J. Peck on April 11, 2012 (Docket No. 48 at 10, 13), and the certificate of service accompanying the motion reflects that Plaintiff was properly served with the motion papers (Docket No. 42), but Plaintiff did not file any opposition to the motion.

## DISCUSSION

### A. Standard of Review

Summary judgment is appropriate when the record demonstrates that there are no genuine issues of material fact in dispute and that one party is entitled to judgment as a matter of law. *See* FED. R. CIV. P 56(C); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of informing the court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, that demonstrate the absence of a genuine issue of material fact. *See* FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 322. In ruling on a motion for summary judgment, all evidence must be viewed in the light most favorable to the non-moving party, *Overton v. N.Y. State Div. of Military & Naval Affairs*, 373 F.3d 83, 89 (2d Cir. 2004), and the court must "resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought," *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

When, as here, a summary judgment motion is unopposed, "[t]he fact that there has been no [such] response . . . does not . . . [by itself] mean that the motion is to be granted automatically." *Champion v. Artuz*, 76 F.3d 483, 486 (2d Cir. 1996); *see also Vt. Teddy Bear*, 373 F.3d at 244. Instead, a court must (1) determine what material facts, if any, are disputed in the record presented on the motion, and (2) assure itself that, based on those undisputed material facts, the law indeed warrants judgment for the moving party. *See Champion*, 76 F.3d at 486; *Allen v. Comprehensive Analytical Grp., Inc.*, 140 F. Supp. 2d 229, 232 (N.D.N.Y. 2001). The motion may fail if the movant's submission fails to establish that no material issue of fact remains for trial, *Amaker v. Foley*, 274 F.3d 677, 681 (2d Cir. 2001), or if the "undisputed facts fail to show that the moving party is entitled to judgment as a matter of law," *Vt. Teddy Bear*, 373 F.3d at 244 (internal citation and quotation marks omitted).

## B. Discussion

Plaintiff claims he was strip searched, without suspicion, three times — on July 27, 2011, and July 28, 2011, in the receiving room of MDC; and on September 27, 2011, in a GRVC housing area. (Am. Compl. at II D). He argues that such searches violate the Fourth Amendment when performed upon a non-felony detainee, such as himself. (*Id.* at V).

This claim fails in light of the Supreme Court's recent decision in *Florence*, which "confirmed the importance of deference to correctional officials and explained that a regulation impinging on an inmate's constitutional rights must be upheld 'if it is reasonably related to legitimate penological interests.'" 132 S. Ct. at 1515 (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). In particular, the Supreme Court held that a suspicionless strip search of a detainee arrested for a non-serious crime conducted prior to his introduction into the general jail population was reasonable and thus consistent with the Fourth Amendment. The Court noted

4

that "a responsible Fourth Amendment balance is not well served by standards requiring sensitive, case-by-case determinations of government need, lest every discretionary judgment in the field be converted into an occasion for constitutional review." *Id.* at 1517-18 (quoting *Atwater v. Lago Vista*, 532 U.S. 318, 347 (2001)). The Court further noted that "correctional officials must be permitted to devise reasonable search policies to detect and deter the possession of contraband in their facilities," *id.* at 1512, and that "[t]he task of determining whether a policy is reasonably related to legitimate security interests is 'peculiarly within the province and professional expertise of corrections officials,'" *id.* at 1517 (quoting *Bell v. Wolfish*, 441 U.S. 520, 548 (1979)). As a result, "in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations courts should ordinarily defer to their expert judgment in such matters." *Id.* (quotations and citations omitted).

Applying these standards here, the searches to which Israel was subjected were "reasonably related to legitimate security interests," including preventing the smuggling of contraband into or out of the correctional facilities, and therefore do not constitute Fourth Amendment violations. *Id.* at 1516-17. Plaintiff alleges that he was strip searched in the intake area of MDC on July 27, 2011, in front of "several inmates and officers females and males." (Am. Compl. at II D). He further alleges that on July 28, 2011, he was searched in the same location. (Am. Compl. at II B, D). Prison records indicate that Plaintiff appeared at the Bronx Supreme Court on July 28, 2012; as such, the searches occurred prior to his exit and entrance to the MDC. (Speight Decl. Ex. C at 28-32). These searches were not unreasonable, as they were in line with DOC policy to strip search prisoners "upon entering and leaving the confines of the facility" (Speight Decl. D at V(a)(i)), which serves the legitimate interest of preventing the smuggling of contraband. *See Florence*, 132 S. Ct. at 1516-17. The presence of other inmates

5

and officers, males and females, does not alter this determination. *See Corr. Officers Benev. Ass'n of Rockland Cnty. v. Kralik*, No. 04 Civ. 2199 (PGG), 2011 WL 1236135, at *11 (S.D.N.Y. Mar. 30, 2011) (noting that "recent cases in this Circuit and elsewhere addressing inmates' right to privacy suggest that occasional, indirect, or brief viewing of a naked prisoner by a guard of the opposite sex may be permissible, but that 'regular and close viewing' is prohibited") (footnotes omitted); *Baker v. Welch*, No. 03 Civ. 2267 (JSR) (AJP), 2003 WL 22901051, at *14 (S.D.N.Y. Dec. 10, 2003) (same and collecting cases); *Miller v. Bailey*, No. 05-CV-5493 (CBA) (LB), 2008 WL 1787692, at *9 (E.D.N.Y. Apr. 17, 2008) ("[S]everal Courts have held that strip searches of prisoners in the presence of other inmates and staff is not constitutionally defective, especially in light of legitimate security concerns.").

Plaintiff's claim with respect to the GRVC search fares no better, even though it took place in connection with a random search of his cell rather than the intake process. The Supreme Court has held that "random searches are essential to the effective security of penal institutions." *Hudson v. Palmer*, 468 U.S. 517, 529 (1984); *see also Florence*, 132 S. Ct. at 1516 (recognizing that "deterring the possession of contraband depends in part on the ability to conduct searches without predictable exceptions"). And the strip search here was consistent with DOC policy, which expressly permits correction officers to conduct strip searches of inmates "prior to the search of an inmate's living quarters to ensure that the inmate is not concealing contraband on his/her person." (Speight Decl. Ex. D at V(b)(i)). Under *Florence* and *Bell*, this Court is required to defer to the judgment of DOC officials that this policy "is reasonably related to legitimate security interests" because such a judgment is "'peculiarly within the province and professional expertise of corrections officials.'" *Florence*, 132 S. Ct. at 1517 (quoting *Bell*, 441 U.S. at 548).

6

In light of the foregoing — and the absence of any evidence, let alone "substantial evidence," indicating that Defendants "exaggerated their response" to the need to limit the presence of contraband in DOC facilities, *id.* — Plaintiff's Fourth Amendment claim fails as a matter of law. Accordingly, Israel's unconstitutional strip search claims must be dismissed and his request for injunctive relief denied. *See Myers v. City of N.Y.*, No. 11 Civ. 8525 (PAE), 2012 WL 3776707, at *9 (S.D.N.Y. Aug. 29, 2012).[1]

## CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment (Docket No. 42) is GRANTED and Plaintiff's complaint is dismissed in its entirety.

The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: October 5, 2012
New York, New York

_____
JESSE M. FURMAN
United States District Judge

---

[1] Although Plaintiff's claims plainly sound in the Fourth Amendment, his amended complaint also seeks damages "for cruel and unusual punishment, unfair treatment, [and] emotional distress." (Am. Compl. at V). These conclusory assertions are insufficient to state a claim, and certainly insufficient to defeat a motion for summary judgment. *See, e.g., Auguste v. N.Y. Presbyterian Med. Ctr.*, 593 F. Supp. 2d 659, 663 (S.D.N.Y. 2009) (noting that a *pro se* party "may not rely simply on conclusory allegations or speculation to avoid summary judgment, but instead must offer evidence to show that its version of the events is not wholly fanciful") (quoting *Morris v. Lindau*, 196 F.3d 102, 109 (2d Cir. 1999)). Further, as the Second Circuit recently explained, "[i]n the case of a person being held prior to trial . . . 'the cruel and unusual punishment proscription of the Eighth Amendment to the Constitution does not apply,' because 'as a pre-trial detainee [the plaintiff is] not being punished.'" *Caiozzo v. Koreman*, 581 F.3d 63, 69 (2d Cir. 2009) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000)).